United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY LEE RAINES,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br><br>            Defendant.<br>_____/ | No. C-10-04268 DMR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS** |

Plaintiff Rodney Lee Raines ("Plaintiff") moves for summary judgment to reverse the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), which found Plaintiff not disabled and denied his application for Disability Insurance Benefits ("SSDIB") under Title II.  *See* 42 U.S.C. § 401 *et seq.*  The Commissioner cross-moves to affirm the disability determination.  The central question in this matter involves the Administrative Law Judge's ("ALJ's") undisputed error in using an incorrect "date last insured" ("DLI") of December 31, 2008 in his analysis, rather than the correct date of March 31, 2013.  This court must now decide whether that error was harmless.  For the reasons set forth below, the court finds that the error was not harmless, because it is not "clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (citations and internal quotation marks omitted).  The court thus grants Plaintiff's motion,

denies the Commissioner's motion and remands this action for further proceedings consistent with this opinion.

## I. Procedural History

Plaintiff filed for Title II SSDIB on July 21, 2008. (A.R. 12.) He asserted that he became disabled on December 15, 2007 when he injured his lower back upon dismounting his truck bed. (A.R. 12.) Plaintiff's application for SSDIB was denied initially on October 28, 2008, and upon reconsideration on February 18, 2009, after which Plaintiff requested a hearing. (A.R. 12, 58, 62.) Administrative Law Judge John R. Price held a hearing on January 21, 2010, and issued a decision on February 26, 2010 finding that Plaintiff was not disabled under the Social Security Act. (A.R. 27-57, 9-19.) Plaintiff requested review of the hearing decision on March 21, 2010, which the Appeals Council denied on August 4, 2010, making the ALJ's decision the final decision of the Commissioner. (A.R. 1-3.) Plaintiff then filed suit in this court for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

Plaintiff was born on September 25, 1956 and has worked most of his adult life doing physical labor as a welder, a bottling line mechanic and a supervisor. (*See* A.R. 33, 105, 131, 365.) In 1989, Plaintiff's pelvis was crushed by the scoop of a bulldozer while he was working on a construction site, and he has suffered chronic low back pain since that accident. (*See* A.R. 198, 360-73.) On December 15, 2007, Plaintiff injured his lower back when he improperly dismounted his truck bed and felt a sudden sharp pain in his lower back that resonated and became so debilitating that he eventually stopped working. (*See* A.R. 198.)

Plaintiff began seeing a series of doctors regularly for diagnosis and treatment of his back pain. On December 18, 2007, Plaintiff made an appointment with his long-term general practitioner, Dr. Thomas Suard, for diagnosis and treatment of his back injury. (A.R. 245.) Plaintiff reported radiating pain down his back during a follow-up appointment with Dr. Suard on January 2, 2008, and no improvement from his last appointment. (A.R. 245.) Dr. Suard continued to treat Plaintiff during his alleged period of disability and through the date of the hearing before the ALJ. Plaintiff was also treated by Dr. Marko Bodor and Dr. Tse Chung Lee for his back injury beginning in

2

January 2008, and Dr. Bodor began administering epidural steroid injections. (*See* A.R. 194, 198-99.) Plaintiff began physical therapy sessions with Eric D. Ewig in January 2008, and Mr. Ewig gave Plaintiff a poor rehabilitation prognosis in late April of 2008. (*See* A.R. 224.) Dr. Jason Huffman also began treating Plaintiff beginning in February 2008, and repeatedly attempted to send Plaintiff back to work following what he hoped were successful pain treatments and physical therapy sessions. (*See* A.R. 202-06.)

On September 13, 2008, an independent consultative medical examiner, Dr. Samir Kadada, examined Plaintiff and found "no restriction in the number of hours [he] could be expected to sit in an eight-hour workday. The amount of weight [Plaintiff] could lift and carry frequently [wa]s 25 pounds and occasionally 50 pounds. There [we]re no postural limitations on bending, stooping, or crouching." (A.R. 297-300.) Dr. J. Lee, a non-examining medical consultant, issued a physical residual functional capacity ("RFC") assessment of Plaintiff on September 23, 2008 and indicated that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and sit, stand and/or walk for a total of 6 hours in an 8-hour workday. (*See* A.R. 304.)

In January of 2009, Dr. Huffman referred Plaintiff to Dr. Benjamin Platt for treatment of his back injuries and pain, and the record indicates that Dr. Platt treated Plaintiff every month from January through November of 2009, including his administration of regular epidural steroid injections. (*See* A.R. 382-404.) On December 21, 2009, Dr. Platt completed a chronic pain RFC questionnaire and Dr. Suard completed a medical assessment of ability to do work-related activities, both of which set forth Plaintiff's physical limitations. (*See* A.R. 429-38.) Specifically, Dr. Platt indicated the following opinions: Plaintiff could rarely lift up to 20 pounds, and never lift 50 pounds; he could rarely twist, bend, squat and climb stairs, and never climb ladders; Plaintiff could perform no sedentary work on a regular basis; and he would miss more than four days of work per month for treatment of his impairments. (A.R. 431-32.) Dr. Suard indicated the following opinions: Plaintiff could lift or carry no weight on either an occasional or frequent basis; he could stand and/or walk for a total of 4 interrupted hours; he could sit for a total of 4 interrupted hours; Plaintiff was completely limited as to postural activities and could never climb, kneel, crouch, stoop, bend or crawl; he could not push or pull; Plaintiff suffered frequent pain more than 40% of the time; and he could work less

than ten hours per work doing sedentary work, but could not perform it all in one day, and would miss more than four days per month due to his back pain.  (A.R. 435-38.)

At the hearing on January 21, 2010, the ALJ asked Plaintiff about his impairments and their impact on his daily activities, and he also heard testimony from Plaintiff's wife and a vocational expert.  (*See* A.R. 27-57.)  In the ALJ's February 26, 2010 decision, he indicated that the DLI was December 31, 2008, and analyzed Plaintiff's disability as of that date.  (*See* A.R. 12-19.)  The ALJ concluded his decision by stating that "through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate . . . ."  (A.R. 19.)

### III.  Issue Presented

Although Plaintiff takes issue with several aspects of the ALJ's decision, the court finds it necessary to address only the question which is dispositive to this motion: whether the ALJ's use of the incorrect date last insured of December 31, 2008 instead of March 31, 2013 constituted harmless error.

### IV.  Standard of Review

Plaintiff seeks review of the Commissioner's decision under 42 U.S.C. § 405(g).  *See* 42 U.S.C. § 405(g).  The court will uphold an ALJ's disability determination "unless it contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is evidence within the administrative record that a reasonable mind could accept as support on which to base a conclusion regarding disability.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is "more than a mere scintilla" but less than a preponderance.  *Id.*  If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).  The court "will not reverse an ALJ's decision for harmless error, which exists when

it is clear from the record that his error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038.

## V. Discussion

Plaintiff and Defendant agree that the ALJ miscalculated the DLI for purposes of determining eligibility for disability benefits. (Pl.'s Mot. 5; Def.'s Opp'n 2, 4.) The parties also agree that the correct DLI is March 31, 2013, instead of the inaccurately cited December 31, 2008. (Pl.'s Mot. 5; Def.'s Opp'n 2, 4.) The "date last insured" is the last day of the period within which a SSDIB claimant can recover benefits for an established disability falling within that period, and he must establish disability on or before that date. (*See* A.R. 12.)

In his decision, the ALJ referred to the DLI as December 31, 2008 more than a dozen times, and repeatedly relied upon its significance in making his disability determination. (*See* A.R. 12, 14-19.) For example, the ALJ made his RFC determination based on the DLI of December 31, 2008. (*See* A.R. 15.) Similarly, in considering Plaintiff's subjective pain testimony, the ALJ focused on evidence "through his date last insured of December 31, 2008," and not after. (A.R. 16.) When he considered medical evidence in the record, the ALJ appeared to give special significance to the fact that some of the findings by Dr. Kadada were made "three months prior to the date last insured." (*See* A.R. 17.) In concluding his findings, the ALJ stated that "through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant *was* capable of making a successful adjustment to other work that existed in significant numbers in the national economy," and made a finding of "not disabled." (*See* A.R. 19, emphasis added.)

The court finds that the ALJ committed reversible error when he miscalculated the DLI in determining whether Plaintiff was disabled because the record does not clearly indicate that his error was inconsequential to the ultimate determination that Plaintiff was not disabled.

The ALJ's error was not harmless because analysis of the entire record indicates that the ALJ might have arrived at a different conclusion had he applied the correct DLI. It is unclear what weight, if any, the ALJ accorded evidence falling beyond the miscalculated DLI, and whether he improperly failed to consider evidence not mentioned in his opinion. For example, the ALJ refers

1  to, but does not analyze the significance of the steroid injections that Dr. Platt regularly administered
2  to Plaintiff for treatment of back pain throughout 2009 – that is, treatment beyond the incorrect
3  December 2008 DLI.  (*See* A.R. 16.)  The ALJ juxtaposed this single reference to the 2009 injection
4  treatments against the fact that Plaintiff "initially declined referral to pain management by Dr.
5  Grigsby." (*See* A.R. 16.)  In light of the ALJ's consistent reliance on the improper DLI, the court
6  cannot determine whether the ALJ mentioned the 2009 pain treatments solely as part of a credibility
7  analysis regarding Plaintiff's subjective testimony about his back pain, or whether the ALJ
8  considered evidence of the treatments as part of the entire record before him.  Additionally, when
9  weighing the medical opinions, the ALJ "afford[ed] greater weight to the assessment of [Dr.
10 Kadada]," whose opinions the ALJ noted were formed "three months prior to the date last insured."
11 (*See* A.R. 17.)  The ALJ's reliance on the DLI here causes concern because it becomes unclear
12 whether the ALJ gave the same weight to evidence falling after the faulty 2008 DLI as that falling
13 before.

14    Similarly, it is not clear whether the ALJ erred by failing to consider evidence falling outside
15 of the miscalculated DLI when he evaluated the rest of the record.  For example, there is evidence of
16 medication that was prescribed to Plaintiff through November 4, 2009 for treatment of
17 injury-induced pain and gout[1] (*see* A.R. 170-172), as well as a statement that Plaintiff prepared on
18 November 17, 2009 indicating changes in his condition since April 1, 2009 such as increased neck
19 pain that interfered with his sleep (*see* A.R. 184-186).  Additionally, Dr. Platt ordered radiologic
20 imaging of Plaintiff's hip and spine on March 2, 2009 and October 6, 2009 which indicated mild

---

[1] The ALJ appears to have made contradictory findings as to Plaintiff's condition of and treatment for gout.  In his decision, the ALJ found that Plaintiff had severe impairments of degenerative disc disease, arthritis of the hip and obesity.  (A.R. 14.)  He also stated that Plaintiff "testified that he suffers from gout.  However, this allegation is not supported by the medical evidence, which contains no diagnosis or treatment of the disorder.  As such, this is not a medically determinable impairment." (A.R. 14.)  Yet later in his decision, the ALJ recognizes that Plaintiff "has also taken medication for occasional gout flare-ups which occur about once every 3-4 months, and during these episodes he also uses a cane." (A.R. 15.)  Additional record evidence supports Plaintiff's gout impairment (*see* A.R. 249, 285, 298, 412, 419), and shows that he refilled his prescription for gout medication every month between March and November 2009, the last date for which such information is available (*see* A.R. 163, 170-72).  On remand, the ALJ should consider the record as a whole, including the combined impact of Plaintiff's impairments. *See* 20 C.F.R. § 404.1523.

multilevel cervical spondylosis but no osseous abnormalities of the hip. (*See* A.R. 379-380.) The absence of discussion of this post-December 2008 evidence impedes the court's ability to determine whether the ALJ erred in finding no disability because the court cannot determine whether the ALJ considered this evidence or not. In sum, this court cannot say that the ALJ's failure to address evidence falling outside of the improper DLI was inconsequential to the determination that Plaintiff is not disabled. Therefore, the court finds that the ALJ committed legal error that was not harmless.

## VI. Conclusion

For the reasons set forth above, the court grants Plaintiff's motion for summary judgment, and remands this case for further proceedings pursuant to 20 C.F.R. § 404.983. On remand, the ALJ must review the record as a whole in light of the proper DLI of March 31, 2013, and must facilitate any further development of the record that the court finds necessary. *See id.*

IT IS SO ORDERED.

Dated: March 1, 2012



DONNA M. RYU
United States Magistrate Judge